**ACTION APARTMENT ASSOCIATION, INC., a California corporation; Mathew Millen, Plaintiffs–Appellants,**

v.

**SANTA MONICA RENT CONTROL BOARD, a municipal entity; Mary Ann Yurkonis, Defendants–Appellees.**

No. 05–56533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 2007.

Filed Dec. 3, 2007.

Robert J. Franklin (argued) and Rosario Perry, Santa Monica, CA, attorneys for Plaintiffs–Appellants Action Apartment Association, Inc., and Mathew Millen.

David Pettit and Michael Roth (argued), Los Angeles, CA; and David Daniels and Michaelyn Jones, Santa Monica, CA, attorneys for Defendants–Appellees, Santa Monica Rent Control Board and Mary Ann Yurkonis.

Before: SIDNEY R. THOMAS, RAYMOND C. FISHER, and RONALD M. GOULD, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, we are presented with a claim that Santa Monica's rent control ordinance is unconstitutional under both the "public use" component of the Fifth Amendment's Takings Clause and the substantive component of the Fourteenth Amendment's Due Process Clause. We conclude that the Fifth Amendment claims are not viable, that the facial Fourteenth Amendment claim is time-barred, and that the as applied Fourteenth Amendment claim is unripe. We therefore affirm the judgment of the district court, dismissing the complaint.

I

In 1979, the people of Santa Monica, California, enacted a rent control ordinance by popular referendum. In 1991, we upheld that ordinance against a due process challenge and a takings challenge. *Schnuck v. City of Santa Monica*, 935 F.2d 171, 172 (9th Cir.1991). We held that Santa Monica's desire to control rapidly rising rents and to cure housing shortages constituted a legitimate governmental purpose, and we held that the 1979 rent control ordinance was a rational means of accomplishing that purpose.

The ordinance has remained in effect continuously since 1979, but the Santa Monica Rent Control Board ("the Board") has amended its provisions on three occasions, twice prior to 2002 and once in 2002. Among the 2002 amendments, the Board enacted some new provisions, including, most significantly, provisions that make it harder for landlords to evict their tenants.

Action Apartment Association ("Action"), an association of landlords, and Matthew Millen ("Millen"), an individual landlord, filed suit under 42 U.S.C. § 1983 exactly two years after the effective date of the 2002 amendments. In their complaint, Action and Millen (collectively, "the Landlords") alleged that the rent control ordinance violates the Fifth Amendment's Just Compensation Clause, the Fifth Amendment's Public Use Clause, and the Fourteenth Amendment's Substantive Due Process Clause.

Acknowledging that *Schnuck* is binding, the Landlords do not contend that rent control is unrelated to any conceivable public purpose. Rather, they contend that the Board's 2002 decision to reenact rent control with only minor alterations was an arbitrary and irrational response to the many problems that have arisen and persisted since the ordinance went into effect in 1979. Specifically, the Landlords contend that no rational legislator could have expected the more stringent eviction requirements to remedy Santa Monica's housing difficulties. They also contend that the only rational solution to the identified housing problems would be to imple-

ment a means test, by which rent ceilings would be available only to poor tenants.

The district court dismissed the complaint, holding that all Fifth Amendment claims were premature and that all substantive due process claims were preempted by the Fifth Amendment. The Landlords appeal the public use claims and the substantive due process claims. They do not appeal the district court's dismissal of their just compensation claims.

## II

Because we conclude that the Plaintiffs failed to distinguish this court's decision in *Schnuck*, we affirm the district court's dismissal of the plaintiffs' public use claims.

■■■ The Public Use Clause generally holds that "one person's property may not be taken for the benefit of another private person without justifying public purpose, even though compensation be paid." *Thompson v. Consolidated Gas Utilities Corp.*, 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937). As the Supreme Court made clear in *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), this requirement is not a stringent one. Indeed, *Kelo* specifically noted that the Fifth Amendment provides "legislatures broad latitude in determining what public needs justify the use of the takings power." *Id.* at 483, 125 S.Ct. 2655. Under that flexible and deferential standard, there can be little doubt that Santa Monica's desire to control rising rents and to remedy housing shortages constitutes a legitimate public purpose. In fact, we have already so held. *Schnuck*, 935 F.2d at 176.

Recognizing that *Schnuck* is binding, the Landlords do not ask us to hold that the rent control ordinance is unrelated to a public purpose. In fact, they fully concede that the ordinance and its amendments intend to serve a legitimate public need. The Landlords' only Fifth Amendment ar-

gument is that the 2002 amendments to the rent control ordinance are not rationally related to the purpose they intend to serve.

In construing this argument as a Public Use Clause claim, the Landlords rest primarily on the Supreme Court's opinion in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). In that case, the Court held that a regulatory taking would satisfy the public use clause if it was "rationally related to a conceivable public purpose." *Id.* at 241, 104 S.Ct. 2321. The Court then conducted a two-step inquiry to determine whether the regulatory taking at issue was constitutional. The first question, of course, was whether the legislature's purpose constituted a "conceivable public purpose." Then, after determining that the legislature's purpose was permissible, the Court asked as a subsequent test of constitutionality whether the legislature's specific approach was rational. *See id.* at 241–42, 104 S.Ct. 2321. Action and Millen focus exclusively on this second prong of the *Midkiff* test, arguing only that the 2002 reenactment and amendments take an irrational approach to solving Santa Monica's housing problems.

This court has confronted such claims before. In *Richardson v. City and County of Honolulu*, 124 F.3d 1150 (9th Cir. 1997), the plaintiffs challenged a Honolulu condominium conversion law, similar to the state law upheld by the Supreme Court in *Midkiff*. The plaintiffs argued that although the state law may have been rationally related to a public purpose when passed, subsequent increases in the price of housing subject to the law (at a rate greater than increases in unregulated housing) demonstrated that a conversion law could no longer be considered a rational solution to Hawaii's housing problems. *Id.* at 1159. The court rejected the argu-

ment, holding that deference to a legislature's public use determination is required "unless the use involves an 'impossibility' or is 'palpably without reasonable foundation.'" *Id.* at 1156 (quoting *Midkiff,* 467 U.S. at 240–41, 104 S.Ct. 2321). Under *Midkiff,* "whether the statute actually succeeds is *irrelevant." Id.* at 1159 (emphasis added). The court concluded that despite how poorly the state law may have performed, the city could have rationally believed that prices would have been even worse had the law not been in effect. *Id.* at 1159–60.

The Landlords' "public use" claims are similar to the claims this court rejected in *Richardson.* Even assuming that the Landlords' allegations concerning the effects of the Santa Monica rent control scheme are true, that would not demonstrate that the city's re-enactment of the rent control statute was irrational. This court has already determined that "[c]ontrolling rents to a reasonable level and limiting evictions substantially alleviate hardships to Santa Monica tenants." *Schnuck,* 935 F.2d at 175. "That rent control may unduly disadvantage others, or that it may exert adverse longterm effects on the housing market, are matters for political argument and resolution; they do not affect the constitutionality of the Rent Control Law." *Id.* The same reasoning holds true today. As in *Schnuck,* we decline to second-guess Santa Monica's chosen means of implementing its indisputably legitimate goals. *See Kelo,* 545 U.S. at 488, 125 S.Ct. 2655 ("'[E]mpirical debates over the wisdom of takings ... are not to be carried out in the federal courts'") (quoting *Midkiff,* 467 U.S. at 242, 104 S.Ct. 2321).

The 2002 amendments to the Santa Monica rent control law do not change this analysis. The amendments merely tweak the rent control scheme enacted in 1979. We fail to see how these minor changes could alter this court's determination in *Schnuck* that the Santa Monica rent control law is rationally related to a legitimate purpose. We therefore hold that there was a valid public purpose for the amendments to the rent control law, and on that basis, affirm the district court's dismissal of claims three and five of the complaint.

### III

We also affirm the district court's dismissal of the Landlords' substantive due process claims, but we again affirm on different grounds than the district court stated. Although in light of recent Circuit authority we must disagree with the district court's conclusion that the Fifth Amendment preempts the Landlords' substantive due process claims, we conclude that Action's facial claim is time-barred and that Millen's as applied claim is unripe.

### A

█ This court previously had held that the Fifth Amendment preempts certain substantive due process challenges to land use regulations. *Armendariz v. Penman,* 75 F.3d 1311, 1321–24 (9th Cir.1996). But we recently recognized that the Supreme Court's decision in *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), signaled that substantive due process can be an appropriate vehicle to challenge the rationality of land use regulations. *Crown Point Dev., Inc. v. Sun Valley,* 506 F.3d 851 (9th Cir.2007). Thus, as an initial matter, we conclude that the Landlords' substantive due process claims are not preempted and that they are cognizable.

The Supreme Court has long held that certain substantive due process claims might be precluded if the same claims could be decided under an "explicit textual source of constitutional protection" rather

than under the "generalized notion of 'substantive due process....'" *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In other words, under the *Graham* rule, a substantive due process claim will be preempted if the asserted substantive right can be vindicated under a different—and more precise—constitutional rubric.

Although the Supreme Court has never cited or applied this preemption rule outside the context of criminal procedural rights, this court had explicitly held that the rule applied to the Public Use Clause. In *Armendariz,* we cited *Graham* to hold that litigants may not state their claims as substantive due process claims if the governmental action they challenge is a taking of property for private rather than public use. 75 F.3d at 1321–24.

Relying on our construction of this rule in *Squaw Valley Development Co. v. Goldberg,* 375 F.3d 936, 949–50 (9th Cir. 2004), the Board here argues that the public use clause provides a preemptive textual source of constitutional protection against the governmental action that the Landlords challenge. Indeed, the Board cites *Squaw Valley* for the broad proposition that, under *Armendariz* and *Graham,* no substantive due process claim will survive if it is based on a deprivation of real property.

To the extent that *Squaw Valley* can be read to support the Board's expansive understanding of *Armendariz,* the Supreme Court's decision in *Lingle* effectively overruled that portion of the *Squaw Valley* opinion. *See Crown Point,* 506 F.3d at 856 (citing *Miller v. Gammie,* 335 F.3d 889, 903 (9th Cir.2003) (en banc) (holding that a three-judge panel should declare a prior opinion effectively overruled if the prior opinion is clearly irreconcilable with intervening Supreme Court authority)). After *Lingle,* "it is no longer possible ... to read *Armendariz* as imposing a blanket obsta-

cle to all substantive due process challenges to land use regulations." *Id.*

In *Squaw Valley,* we noted that a substantive due process challenge brought "in the context of regulating use of real property" might not be "viable in this circuit." 375 F.3d at 950. The sole basis for that skepticism was the Fifth Amendment's preemptive effect. The *Squaw Valley* opinion traced a line of cases that started with and followed from *Armendariz,* and the *Squaw Valley* opinion indicated that those cases created a "blanket prohibition" of any substantive due process claim "based on a deprivation of real property." *Id.* at 949, 950 n. 7. The court then rejected the specific substantive due process claim at issue in *Squaw Valley* on the ground that the claim could be stated as a takings claim—that is, as a challenge to the regulation's ability " 'substantially [to] advance legitimate state interests.' " *Id.* at 950 (quoting *Macri v. King County,* 126 F.3d 1125, 1129 (9th Cir.1997)).

■ As we recently recognized, that specific logic cannot survive the Supreme Court's decision in *Lingle. Crown Point,* 2007 WL 3197049, at *4. In *Lingle,* the Court specifically held that an arbitrary and irrational deprivation of real property, although it would no longer constitute a taking, might be "so arbitrary or irrational that it runs afoul of the Due Process Clause." 544 U.S. at 542, 125 S.Ct. 2074. Given that holding, it must be true that the *Armendariz* line of cases can no longer be understood to create a "blanket prohibition" of all property-related substantive due process claims. *Squaw Valley,* 375 F.3d at 949. After *Lingle,* "the Fifth Amendment does not invariably preempt a claim that land use action lacks any substantial relation to the public health, safety, or general welfare," *Crown Point,* at 856, regardless of anything *Squaw Valley* said to the contrary.

We see no difficulty in recognizing the alleged deprivation of rights in real property as a proper subject of substantive due process analysis. We have long held that a substantive due process claim "must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998). In *Squaw Valley*, we specifically reaffirmed the principle that landowners have "a constitutionally protected property interest" in their "right to devote [their] land to any legitimate use." 375 F.3d at 949 (internal quotation marks omitted) (citing *Harris v. County of Riverside*, 904 F.2d 497, 503 (9th Cir.1990)). An arbitrary deprivation of that right, thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action.[1]

The Landlords do not assert that the government has "taken" their property within the meaning of the Fifth Amendment. They do, however, assert that the provisions of the rent control ordinance neither serve nor are "rationally related to any legitimate government purpose," and therefore unconstitutionally violate their right to use their property as they see fit. [GB 23] Specifically, they argue that the provisions are "arbitrary, unreasonable, and unrelated to the general welfare" because "there is no legitimate interest in subsidizing non-housing uses of rental properties nor in providing new rights and affirmative defenses for illegal occupants," particularly where California law does not recognize illegal occupants as tenants. [RB 12, GB 23] "[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle*, 544 U.S. at 542, 125 S.Ct. 2074 (citing *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708). The Landlords' challenges to the rent control provisions satisfy this standard and state a viable substantive due process theory.

**B**

Despite the legal viability of the Landlords' substantive due process theory, both of their Fourteenth Amendment claims fail on timeliness grounds. Action's claim is time-barred, and Millen's claim is unripe.

**1**

Because Action's claim rests on provisions of the rent control ordinance that have been in effect since 1979, its 2004 complaint was filed well beyond California's two-year statute of limitations for § 1983 claims.

It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, *see Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and in California, that limitations period is two years. *See* Cal. Code Civ. P. § 335.1. "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to

---

1. In another recent opinion, we explained the distinction between substantive due process and Takings Clause claims:

 "[The Takings Clause] 'is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference....' Due process violations cannot be remedied under the Takings Clause, because 'if a government action is to be found impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.' "
 *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 505 F.3d 860, 870 n. 16 (9th Cir.2007) (citing *Lingle*, 544 U.S. at 537, 543, 125 S.Ct. 2074).

know of the asserted injury." *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir.1991).

In the context of a facial challenge under the Takings Clause, we have held that the cause of action accrues on the date that the challenged statute or ordinance went into effect. *See id.* at 1087 (citing *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1276 (9th Cir.1986)). We also have held that the mere re-enactment of a statutory scheme does not restart the clock, *id.* at 1086, and that substantive amendments to a takings statute will give rise to a new cause of action only if those amendments alter "the effect of the ordinance upon the plaintiffs." *id.*

] Although we have not yet held that these accrual rules apply to facial substantive due process claims, *see Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir.1993) (rejecting a facial takings claim as time-barred but considering a similar substantive due process claim on the merits, without discussing timeliness), we see no reason to distinguish between facial takings claims and facial substantive due process claims. First, the *Wilson* limitations period applies to all § 1983 claims, regardless of the civil right asserted. 471 U.S. at 272, 105 S.Ct. 1938. Second, the logic for the accrual rules in the takings context applies with equal force in the substantive due process context. Given the general rule that "the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury," it stands to reason that any facial injury to any right should be apparent upon passage and enactment of a statute. *De Anza*, 936 F.2d at 1086. Action, thus, should have known of its injury on the date of the ordinance's enactment.

The only question that remains is whether Action's asserted injury arises from provisions that were enacted in 1979 or from substantive amendments that were enacted in 2002 and that altered "the effect of the ordinance on" Action. If Action challenges either the substance of the 1979 provisions or the mere re-enactment of those provisions in 2002, then its claim is time-barred.

Unlike its "public use" clause claim, Action's substantive due process claim makes no mention whatsoever of the 2002 amendments. Action states only that the "application of Rent Control to Plaintiffs' property deprives Plaintiffs of their property rights without due process of law because Rent Control is not rationally related to its stated purposes." That allegation was as true in 1979 as it is today.

We therefore hold that Action's facial substantive due process claim is time-barred.

### 2

Millen's substantive due process challenge is time-barred in part and unripe in part.

First, Millen alleges that the enforcement of rent ceilings for the benefit of a wealthy tenant is irrational. That claim is time-barred because the rent ceiling has been in effect continuously since 1979 and was not substantively altered in 2002.

 Second, Millen seems to allege that the new eviction requirements, which were enacted in 2002, give rise to a new injury on the ground that the application of those provisions for the benefit of the same tenant would be arbitrary. Millen, however, has not alleged that the government has actually enforced any of those provisions against him and for the benefit of the identified tenant.

 "[A] substantive due process violation is complete as soon as the government action occurs." *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir.1997). However, "[t]he mere existence of a stat-

ute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir.1983).

In this case, the "government action" that Millen challenges is the enforcement of the new eviction requirements for the protection of a particular tenant in his building. That specific government action has not yet occurred. As a result, his claim is not yet ripe for review.

**AFFIRMED.**